Argued September 22, dismissed October 13, 1915.

## JOY v. PALETHORPE.*

(152 Pac. 230.)

**Adverse Possession—Continuity.**

1. Where title to plaintiff's and defendant's lot had united in one owner within 10 years from the construction of a walk alleged by plaintiff to be a foot or so on defendant's lot, there was a break in the continuity of the adverse possession, and plaintiff's adverse possession dated only from the time of his purchase from such owner.

[As to the necessity and requisites of continuity of adverse possession, see note in 13 Am. Dec. 185.]

---

*Unbroken continuity as essential element of adverse possession is discussed in note found in 15 L. R. A. (N. S.) 1202.          REPORTER.

Boundaries—Boundary Agreement—Estoppel.

2. An agreement between adjoining owners as to a boundary line operated solely by way of estoppel.

[As to location of boundary by acquiescence or agreement, see notes in 69 Am. Dec. 711; 27 Am. Rep. 239.]

Boundaries—Estoppel—Pleading.

3. An estoppel by agreement of the parties respecting a boundary line must be pleaded.

Dismissal and Nonsuit—Defects in Pleadings.

4. Where plaintiff, in a suit to establish his title by adverse possession to a strip of land covered by his wall and sidewalk, failed to plead the actual title which his evidence tended to prove, and did not allege the estoppel by reason of an agreement as to a boundary line which he attempted to show at the trial, and his claim of adverse possession had been broken by unity of both estates, and defendant showed no title in himself and claimed no damages, the court could not render substantial justice without disregarding the pleadings, and would dismiss without prejudice to another suit.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.    Statement by MR. JUSTICE McBRIDE.

This is a suit brought by Allan R. Joy against Mabel Palethorpe to enjoin defendant from repeated trespass upon certain property described in the complaint and to quiet plaintiff's title thereto.

The complaint alleges that plaintiff is the owner in fee simple of lot 10, block 8, Richmond Addition to the City of Portland, Multnomah County, Oregon, together with all buildings and improvements thereon and all appurtenances thereunto belonging, therewith had, or enjoyed, including a sidewalk running north and south at the easterly extremity of said property and a cement wall in front extending to the easterly edge of said sidewalk and supporting the soil of said lot; that said sidewalk and said wall extend over upon the adjoining lot on the east, to wit, upon lot 12, in block 8, in said Richmond Addition, for a distance of 15 inches; that said sidewalk and said wall are necessary for the use and enjoyment of plaintiff's said property, and that this

plaintiff and his grantors have occupied and possessed the ground covered by said walk and said wall, to wit, a strip 15 inches wide and 100 feet deep, being the westerly 15 inches of said lot 12, block 8, Richmond Addition, openly and notoriously and adversely to this defendant and her grantors, and have used and enjoyed the same continuously and under a claim of right for more than 22 years last past; that defendant is the owner of the adjoining lot on the east, to wit, said lot 12, in block 8, of said.Richmond Addition, save and except the aforesaid strip of 15 inches in width running back 100 feet and being the westerly 15 inches of said lot 12, occupied and possessed by plaintiff as aforesaid; that many years ago the defendant built and established a fence on the easterly line of plaintiff's said walk and wall running the entire length of defendant's said lot, thereby separating plaintiff's property from defendant's property; that defendant has ever since maintained said fence, and that the same is now standing as originally erected, and marks the true and legal line between the property of this plaintiff and defendant; that plaintiff's title has been and is definitely fixed and established to, and that plaintiff is the owner of all of the hereinbefore described property lying west of, defendant's said fence.   The complaint recites various trespasses of defendant and alleges that she threatens to take forcible possession of plaintiff's walk and wall, and that she is insolvent and unable to respond in damages.

The answer admits that plaintiff is the owner of lot 10, in block 8, and admits that his sidewalk extends over and upon defendant's lot, but denies every other allegation of paragraph 1 of the complaint.   Answering paragraph 2 of the complaint, defendant admits

that she is the holder of the record title to lot 12, of block 8, and denies every other allegation therein. She then sets up title in herself to the whole of lot 12, and alleges that plaintiff has, within the past 5 years, wrongfully constructed a cement walk which extends over and upon plaintiff's lot 12 or 16 inches, more or less, and has also built a wall in front of lot 10, which extends 16 inches, more or less, over and upon the west side of her lot, and that he wrongfully refuses to remove the same, and pleads adverse possession of said strip. There was a reply traversing the new matter in defendant's answer. Upon the trial there was a decree quieting defendant's title to the disputed strip and awarding her $100 damages, from which plaintiff appeals.        DISMISSED WITHOUT PREJUDICE.

For appellant there was a brief with oral arguments by *Mr. John Van Zante* and *Mr. Allan R. Joy.*

For respondent there was a brief and an oral argument by *Mr. Cicero M. Idleman.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Stripped of all verbiage, plaintiff's complaint must be taken to allege that he had title by adverse possession, to a strip of land 15 inches in width and extending along the westerly side of lot 12, in block 8. It is clear, as conceded by the pleadings, that the record title to the whole of lot 12 is in defendant. Upon the trial plaintiff called as a witness one J. M. Cheaver, who testified, in substance, that he had lived in Richmond Addition and was familiar with its conditions ever since it had been laid out, and was acquainted with the premises in dispute; that 16 or 17 years before the

trial one Meeks owned lot 10 and Judge Arthur Frazer lot 12; that shortly after they bought he was present and assisted in fixing the line for the purpose of building a division fence; that for a starting point he took a post at a lot corner on Clinton Street and stuck up a long pole at this place; that Frazer stood at the corner of his lot and Meeks stood in the middle, and they sighted through, thereby ascertaining the west line of the lot, and a fence was placed accordingly; that the stakes he measured from were the original stakes set when the survey of the addition was made, and he supposed they were where they were originally placed, as he never saw them moved. Mrs. A. L. Frazer corroborated Cheaver's testimony as to the building of the fence and walk, and testified that roses were planted along the fence at the easterly edge of the walk. Mrs. Dunham testified that she moved into the house on lot 12 in 1899 and remained there until 1904; that Meeks was then living in the other house, and that there was a board walk running along the easterly side of his lot, which was supposed to belong to him; that she did not know whether it was on the line or not, as there was never any question about it. She stated she never used the walk unless she wished to go to Meek's back door, and that it was not used in common. Plaintiff Joy testified that he bought the property in 1906, and had been in possession of it ever since; that when he went into possession there was a board walk on the easterly side, which he had subsequently replaced with the present cement walk; that before he purchased he made inquiry, and was informed that the east line of lot 10 was along the east side of the walk; that nearly 8 years before the trial defendant put up a fence composed of iron posts and woven wire along the east side of the

wooden walk, which was the same walk described by witness Cheaver; that the fence was exactly on the line according to the original platting of the addition. Meeks, called by defendant, corroborated Cheaver as to the establishment of the line, and asserted that the fence was placed upon the true line of the lot. The defendant testified that the fence placed by her was merely temporary to prevent dogs from running over sweet peas and other flowers planted upon her lot, and that she never intended to recognize it as the true line; that she had had a survey made which showed the true line to be where she now claimed it, and that in replacing the board walk with the cement walk plaintiff had crowded from one and one half to three inches farther to the east; that she knew that the fence was inside the east line of lot 12 when the trellis was put up. Defendant stated that a survey made by the city and county surveyor showed that she did not have the 50 feet of frontage that she should have; that they began the survey at the section line on Division Street. No notes of such surveys were produced, and the surveyors who made them were not called. Other testimony showed that in 1901 the title to both lots passed to the United States Loan & Savings Society, which held it until 1906, when it sold lot 10 to plaintiff, and later sold lot 12 to defendant.

1–3. It is clear that plaintiff's claim of adverse possession by himself and his grantors of the disputed strip cannot be maintained for the reason that before the 10 years from the date of erection of the original walk expired the title and possession of both properties became united in the United States Loan & Savings Society, which did not sell to plaintiff until 1906. As this corporation could not hold adversely to itself,

the continuity of the adverse possession was broken, and plaintiff's adverse possession dates only from 1906, which is less than 10 years before the commencement of this suit. The complaint expressly alleges that the disputed strip projects 15 inches over on defendant's lot, which is admitted. Plaintiff has pleaded one case, while his testimony strongly tends to prove another. The testimony of Meeks and Sheaver indicates that the line between the lots was ascertained shortly after the addition was platted, and while the original lot stakes were still visible, and it seems most probable that the original boundary line of the lots ran substantially along the east line of plaintiff's present walk. As to that matter it is not a question as to whether or not defendant's lot contained a full 50-foot frontage, but where the lines originally ran upon the ground. The evidence as to an agreed line between Frazer and Meeks has no bearing here because such an agreement operates solely by way of estoppel: *Vosburgh* v. *Teator*, 32 N. Y. 561. In this state an estoppel of this character must be pleaded: *Rugh* v. *Ottenheimer*, 6 Or. 231 (25 Am. Rep. 513); *Remillard* v. *Prescott*, 8 Or. 37; *Bays* v. *Trulson*, 25 Or. 109 (35 Pac. 26); *First Nat. Bank* v. *McDonald*, 42 Or. 257 (70 Pac. 901); *Haun* v. *Martin*, 48 Or. 304 (86 Pac. 371); *Ashley* v. *Pick*, 53 Or. 410 (100 Pac. 1103).

4. As the case stands, plaintiff had failed to plead the actual title which his evidence tends to prove, and has failed to allege the estoppel by reason of the agreement as to the boundary line and the acquiescence therein by Frazer and defendant, which he attempted to establish on the trial, while, as already stated, his chain of adverse possession was broken by the union of both estates in a common ownership. The defend-

ant has shown no title in herself to the strip in controversy beyond the admission in plaintiff's complaint, which, as stated on the trial and shown by the testimony, was probably a mistake. There was no claim for damages and no evidence of any damage whatever to defendant's freehold beyond merely nominal damages. It is evident that the condition of the pleadings was such that the court was unable to render substantial justice without wholly disregarding them.

The suit will therefore be dismissed at plaintiff's cost, without prejudice to either party to bring another suit to settle their respective rights to the property in controversy.

DISMISSED WITHOUT PREJUDICE.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.